UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY McCLEAN, et al., | Case No. <u>23-cv-01054-AMO</u> |
| Plaintiffs, | |
| v. | **ORDER RE MOTIONS TO DISMISS** |
| | Re: Dkt. Nos. 33, 35 |
| SOLANO/NAPA COUNTIES ELECTRICAL WORKERS PROFIT SHARING PLAN, et al., | |
| Defendants. | |

In this ERISA benefits action, two motions to dismiss, each filed by a different set of defendants, are currently pending before the Court. The Court held a hearing on the motions on June 27, 2024. Having considered the arguments advanced by counsel during that hearing, together with the parties' papers, and the relevant legal authority, the Court resolves the motions as set forth below.

## I.    BACKGROUND

### A.    Factual Background[1]

#### 1.    The Parties

##### a.    *Plaintiffs*

Plaintiff Rodney McClean worked as an electrician since 1974 and has been a member of the International Brotherhood of Electrical Workers ("IBEW") since that time. ECF 31 ¶ 1.

---

[1] This factual background is taken from the allegations in the operative complaint, which the Court accepts as true and construes in the light most favorable to Plaintiffs for the purpose of the instant motion. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

IBEW Local 180, which covers Solano County, has always been McClean's "home local." *Id.* ¶¶ 1, 27.  McClean "is and was at all times relevant hereto a participant and a beneficiary, within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), in all of the ERISA-regulated employee pension benefit plans" at issue.  *Id.* ¶ 7.

Plaintiff Joanna McClean is Rodney McClean's legal spouse.[2]  *Id.* ¶ 8.  She "is and was at all times relevant hereto the legal spouse of Mr. McClean, is the beneficiary of all of his pension accounts, and is a beneficiary, within the meaning of ERISA, 29 U.S.C. § 1002(7), of all of the ERISA-regulated employee benefit pension plans" at issue.  *Id.*

### b.    *Defendants*

#### i.    *Solano/Napa Counties Electrical Workers Profit Sharing Plan*

The Solano/Napa Counties Electrical Workers Profit Sharing Plan (the "PSP" or the "IBEW Local 180 PSP") is a Pleasanton-based defined contribution pension plan.  *Id.* ¶ 9. Plaintiffs name the plan as a defendant under Rule 19(a) "solely to ensure that complete relief can be granted."  *Id.*

#### ii.    *Board of Trustees, Solano/Napa Counties Electrical Workers Profit Sharing Plan*

The Board of Trustees of the Solano/Napa Counties Electrical Workers Profit Sharing Plan (the "PSP Board") is the administrator and fiduciary of the Solano/Napa Counties Electrical Workers Profit Sharing Plan.  *Id.* ¶ 11.  The Board has union-appointed and management-appointed trustees.  *Id.*  It "maintains ultimate discretionary authority over the administration of the PSP, and controls and supervises the investment, management, administration, and disposition of the PSP's assets."  *Id.*

#### iii.    *Solano-Napa Counties Electrical Workers Pension Plan*

The Solano-Napa Counties Electrical Workers Pension Plan (the "Pension Plan") is a Pleasanton-based defined benefit pension plan.  *Id.* ¶ 10.  Plaintiffs name the plan as a defendant

---

[2] As used throughout this order, "McClean" refers to Rodney McClean.  "Plaintiffs" refers to both Rodney McClean and Joanna McClean.

United States District Court
Northern District of California

1    under Rule 19(a) "solely to ensure that complete relief can be granted." *Id.*

2                           iv.       *Board of Trustees, Solano-Napa Counties Electrical Workers*
                                      *Pension Plan*
3

4            The Board of Trustees of the Solano-Napa Counties Electrical Workers Pension Plan (the

5    "Pension Plan Board")[3] is the administrator and fiduciary of the Solano-Napa Counties Electrical

6    Workers Pension Plan. *Id.* ¶ 12. The board has union-appointed and management-appointed

7    trustees. *Id.* It "maintains ultimate discretionary authority over the administration of the Pension

8    Plan, and controls and supervises the investment, management, administration, and disposition of

9    the Pension Plan's assets." *Id.*

10                          v.        *The Northern California Electrical Workers Pension Plan*

11           The Northern California Electrical Workers Pension Plan (the "Local 6 Pension Plan") is a

12   San Francisco-based defined benefit pension plan. *Id.* ¶ 24. Plaintiffs name this entity as a

13   defendant under Rule 19(a) "solely to ensure that complete relief can be granted." *Id.*

14                          vi.       *The Board of Trustees of the Northern California Electrical*
                                      *Workers Pension Plan*
15

16           The Board of Trustees of the Northern California Electrical Workers Pension Plan ("Local

17   6 Board of Trustees") is the administrator and fiduciary for the Northern California Electrical

18   Workers Pension Plan. *Id.* ¶ 25. The board "maintains ultimate discretionary authority over the

19   administration of the Local 6 Pension Plan, and controls and supervises the investment,

20   _____

21   [3] The term "Boards" as used herein refers to the PSP Board and the Pension Plan Board. The
     individuals comprising both Boards are also named as defendants. ECF 31 ¶¶ 13-21. They are:
22   (1) Herb Watts (union member and union co-chair), (2) Stanley Nelson (union member),
     (3) Kimberly Anderson (union member), (4) Dean Lloyd (union member), (5) Greg Armstrong
23   (management member and management co-chair), (6) Tiffany Kuehl (management member),
     (7) Scot VanBuskirk (management member), and (8) Patti Long (management member) (together,
24   the "Individual Trustees"). *Id.* ¶¶ 13-21. Plaintiffs allege that each individual board member is an
     administrator and fiduciary of the PSP and the Pension Plan, "personally participated in engaging
25   in and/or authorizing the conduct of the Boards" that is the subject of the operative complaint, and
     "is and was responsible for monitoring all other fiduciaries of both the PSP and the Pension Plan."
26   *Id.* ¶¶ 13-20. The Court will refer to the Pension Plan, the PSP, the Boards, the Individual
     Trustees, Richard McClaskey, and Benesys together as the "Local 180 Defendants." The Court
27   will refer to the Local 6 Pension Plan and the Local 6 Board of Trustees as the "Local 6
     Defendants."
28

United States District Court
Northern District of California

1  management, administration, and disposition of the Local 6 Pension Plan's assets." *Id.*

2                          *vii.*    *Richard McClaskey*

3        McClaskey serves as the manager and fiduciary for the PSP and the Pension Plan. *Id.* ¶ 23.

4  He "supervises and directs the day-to-day operations and administration of both plans," "has the

5  authority to make discretionary benefit determinations[,]" and "has discretion and control over the

6  administration of the plans and over disposition of their assets." *Id.*

7                          *viii.*    *Benesys*

8        Benesys is a Michigan corporation operating in California. *Id.* ¶ 22.  "It is the third-party

9  administrator to which the Boards of Trustees of both the PSP and the Pension Plan have

10  delegated discretionary responsibility for the day-to-day operations, record keeping, record

11  maintenance, participant communications, and administration . . . ." *Id.*

12              2.    McClean's Work History and Application for Benefits

13        McClean worked thousands of hours within the geographic jurisdiction of IBEW's San

14  Francisco local, IBEW Local 6. *Id.* ¶¶ 3, 27.  His employers withheld pension contributions from

15  his paychecks and sent those contributions to the Local 6 Pension Plan. *Id.* ¶¶ 3, 27.  At the time

16  he performed the work, McClean "executed and submitted all necessary paperwork to have those

17  contributions 'reciprocated' (meaning 'transferred,' or 'forwarded') to his Local 180 pension

18  plan." *Id.* ¶ 3.

19        In 2009, McClean was "diagnosed with deteriorating neuropathy and hypokalemic periodic

20  paralysis, rare progressive disabling conditions that cause seizures, muscle weakness and

21  paralysis[.]" *Id.* ¶ 28.  Seeking to take his disability retirement, McClean completed paperwork

22  for multiple pension accounts. *Id.*  "Employees of the Pension Plan office, with assistance from

23  Local 180 employees," helped McClean complete that paperwork. *Id.*  In October 2009, McClean

24  received "a certificate of congratulations" from the IBEW International Union as a formal

25  acknowledgment of his retirement. *Id.*  "The IBEW National fund" also recognized that McClean

26  "had accrued thirty-one (31) years of credited service." *Id.*

27        At some point, "personnel in the Local 180 pension office" told McClean "that his Local

28  180 disability pension was conditioned on his receipt of Social Security Disability (SSDI) benefits

United States District Court
Northern District of California

4

and was delayed while Social Security went through its process." *Id.* ¶ 29.  According to McClean, "[t]he Local 180 defined benefit pension plan and its administrators and trustees were aware that [he] had submitted his application for disability pension benefits in 2009 and were also aware when he received his SSDI benefits in 2011, but deliberately failed to complete the processing of [his] application." *Id.*  Two individuals – Mike Smith, the "Local 180 Business Agent," and Dan Broadwater, "a Trustee and fiduciary of the Plans in 2009," repeatedly told McClean "over the subsequent years that the application was still pending." *Id.*  "[A]t various times between 2009 and 2019," Smith and Broadwater also told McClean that a "three-year break in service[4] had terminated his pension eligibility . . . , and that he needed at least three additional years of service to qualify for benefits." *Id.*

McClean alleges that the representations by Smith and Broadwater were false, because he "should already have vested by 1992, and even if he had not, would again have fully vested in the years between 1995 and 2009." *Id.*  McClean also alleges that "[b]ecause of the physical and cognitive limitations imposed by his medical condition, [he] did not understand that these representations were false, and he relied upon them to his detriment." *Id.*

Nonetheless, McClean started teaching for Local 180's apprenticeship and training programs to obtain the remaining service credit he needed. *Id.* ¶ 29.  After three years as an instructor, on September 12, 2019, McClean spoke to Donna Ochs at IBEW Local 180 to request his pension benefits. *Id.* ¶ 30.  Ochs told McClean that he had already applied in 2009, and she thought he had been receiving benefits continuously since that time. *Id.*  She was surprised and could not understand why McClean was not already receiving his full pension. *Id.*  She "promised to do everything in her power to help . . . and told him to return to the following day." *Id.*  When McClean returned, "Ochs refused to speak with him at all." *Id.*

On September 13, 2019, McClean called McClaskey at the Benesys office. *Id.* ¶ 31.  McClean told McClaskey "the entire story," and McClaskey responded "wow, that's a lot of money [that Mr. McClean was owed] . . . ." *Id.* (modifications in original).  McClaskey "claimed

---

[4] McClean broke his back in 1992 and was off work for three years. *Id.* ¶ 29.

United States District Court
Northern District of California

that the necessary records were stored on paper off-site[,] and he needed at least two weeks to secure and review them."[5]  *Id.*

When McClean called McClaskey two weeks later, "McClaskey expressed anger and frustration[.]"  *Id.*  McClaskey said that "McClean was not the only plan participant whose issues [he] had to address."  *Id.*  When McClean called McClaskey the following week, McClaskey told him that "he only had three years of pension credit and the Plan did not owe him anything."  *Id.*  After reviewing records again, McClaskey sent McClean a letter stating that McClean actually had 4.96 years of credit, short of the five years needed to be eligible for pension benefits.  *Id.* ¶ 32.  In 2021, McClean "resubmitted a fresh application" for pension benefits through his counsel, which was granted.[6]  *Id.* ¶ 34.  Based on payroll records McClean submitted, the Pension Plan determined that McClean had accrued slightly more than five years of service credit and "was entitled to a benefit of less than $600 per month."  *Id.*

---

[5] "McClaskey and others in the Pension Plan's office denied any knowledge of the original application" even though Ochs was aware of McClean's 2009 pension application.  *Id.* ¶ 31.

[6] Also in 2021, when the PSP produced "a set of check requests for hardship withdrawals from that plan that Mr. McClean had ostensibly submitted to access his funds," McClean first discovered that approximately $200,000 had be stolen from his PSP account "by an unknown individual or individuals working in the Plan office."  *Id.* ¶ 4.  Most of the check requests the PSP produced "were not completed in Mr. McClean's handwriting, were not signed by him (i.e., they appear to bear forged signatures), and at least one bears a social security number that is not [his]."  Despite McClean's written requests, "the Plan and its fiduciaries and administrators have failed to provide copies of the back side (i.e., the endorsed side) of the cancelled checks, which would allow [him] to determine where his stolen Profit Sharing Plan assets had been deposited."  *Id.*  In addition, "only after Mr. McClean learned in 2021, during the exhaustion of his administrative appeal, that his PSP account had been depleted without his knowledge," did he become aware "that the PSP maintains an on [*sic*] online portal for participants to access, view, and self-administer their PSP accounts." *Id.* ¶ 44.  No one at the PSP ever informed McClean that such a portal existed, and McClean "subsequently learned that other members of IBEW Local 180, some still working, were also ignorant of the existence of the web portal."  *Id.*  When McClean accessed the portal for the first time, he "learned that one or more other individuals, unknown to him, had accessed and managed his PSP online account pages on the web portal without his knowledge or permission."  *Id.*  McClean "is informed and believes and thereon alleges that the Trustees, administrators, and fiduciaries of the PSP have failed to notify PSP plan participants of the existence of the portal, and have failed to ensure that the portal is safe, secure, and free from misuse and abuse by persons with no reason or right to access it."  *Id.*

Because that amount was less than 1/10 of what McClean believed he was entitled to, on July 16, 2021, he submitted an administrative appeal through his counsel. *Id.* ¶ 34. As part of the appeal, McClean submitted "most of the pay stubs his employers had provided him over his entire career[,]" and "affidavits of former coworkers attesting to work in various jurisdictions around the Bay Area for periods in which the Pension Plan was showing no contributions" for McClean.[7] *Id.* On July 27, 2021, McClaskey acknowledged receipt of the administrative appeal. *Id.*

The Pension Plan Board was set to consider McClean's appeal during its third quarter meeting in September 2022. *Id.* ¶ 37. During that time however, the Local 6 Defendants had not yet responded to McClaskey's letters about McClean's contributions. *Id.* At McClean's counsel's request, the Pension Plan Board agreed to defer consideration of McClean's appeal to its December 2022 meeting. *Id.* However, in September 2022, McClaskey gave the Pension Plan Board a presentation "about the details of the appeal and all the reasons that [he] recommended that the appeal should be denied and his own anemic and erroneous calculation of Mr. McClean's pension benefit upheld." *Id.* ¶ 38. According to McClean, "[t]he presentation included representations to the Pension Plan Board that were demonstrably false, for example, that the Pension Plan had no record of contributions for periods in which Mr. McClean had provided actual payroll records from his employers showing that contributions had been paid to into the Pension Plan on his behalf." *Id.*

Between September and December 2022, McClean submitted additional payroll records and paystubs. *Id.* ¶ 39. Before the December 2022 board meeting, McClean's counsel confirmed that he had no additional material to provide. *Id.* McClaskey asked McClean's counsel to delay the presentation of the appeal to the board until the March 2023 meeting. *Id.* McClean declined, and McClaskey acknowledged that. *Id.*

After the December 2022 board meeting, on December 9, 2022, McClaskey sent a letter to

---

[7] Some of those coworkers "were and are receiving benefits from the Pension Plan for work performed directly under Mr. McClean's direction on jobs and during periods for which the Pension Plan claims to have no records of contributions or credited service for Mr. McClean." *Id.* ¶ 34.

McClean's counsel indicating that the board had been unable to resolve the appeal because it needed additional information.  *Id.* ¶ 40.  The letter listed nine questions for McClean.  *Id.* McClean alleges that he had already provided the information requested, and that McClaskey had acknowledged McClean's representation that he had no additional information to provide.  *Id.*

### B.   Procedural Background

Plaintiffs commenced this lawsuit on March 8, 2023.  ECF 1.  On May 22, 2023, the Local 180 Defendants moved to dismiss the original complaint.[8]  ECF 15.  After full briefing and a hearing, the Court granted the motion with leave to amend.  ECF 22, 23, 30.

On December 25, 2023, Plaintiffs timely filed the operative amended complaint.  ECF 31. In it, they assert claims for (1) benefits under plan terms pursuant to ERISA § 502(a)(1)(B) against the Pension Plan, Individual Trustees, Benesys, McClaskey, and the Pension Plan Board; (2) breach of fiduciary duties and violation of ERISA § 502(a)(3) against the Individual Trustees, Benesys, McClaskey, and the Pension Plan Board;[9] (3) breach of fiduciary duties and violation of ERISA under § 502(a)(2) against each of the Individual Trustees, Benesys, McClaskey, and the Pension Plan Board; (4) breach of fiduciary duty for failure to monitor under ERISA §§ 502(a)(3) and (a)(2) against the Individual Trustees and the Pension Plan Board; (5) breach of fiduciary duty (co-fiduciary breach) under ERISA §§ 405 and 502(a)(3) against the Individual Trustees, Benesys, McClaskey, and the Pension Plan Board; (6) breach of fiduciary duty for failure to maintain and provide records under ERISA § 502(a)(3) against the Individual Trustees, Benesys, McClaskey, the Pension Plan Board, and the PSP Board; (7) statutory penalties for withholding documents under ERISA § 502(c) against the Boards; (8) breach of fiduciary duty for failure to maintain and provide records under ERISA § 502(a)(3) against the Local 6 Pension Plan and the Local 6 Board of Trustees;[10] and (9) breach of fiduciary duties and violation of ERISA § 502(a)(3) for sending a bad check against each of the Individual Trustees, Benesys, McClaskey, and the Pension Plan

---

[8] On that date, the Local 6 Defendants filed an answer.  ECF 14.

[9] Plaintiffs plead the second, third, fourth, and fifth causes of action as "alternative claim[s] for relief pursuant to Federal Rule of Civil Procedure 8(d) . . . ."  ECF 31 ¶¶ 48, 56, 65 71.

United States District Court
Northern District of California

1    Board.  *Id.* ¶¶ 45-97.

2           On January 8, 2024, the Local 180 Defendants[11] and the Local 6 Defendants separately

3    moved to dismiss the amended complaint.  ECF 33, 35.  Plaintiffs filed their opposition to each

4    motion on February 12, 2024.  ECF 39, 40.  The Local 6 Defendants filed their reply on February

5    20, 2024.  ECF 41.  The Local 180 Defendants filed their reply on February 26, 2024.  ECF 42.

6    The Court held a hearing on the motions on June 27, 2024.  ECF 49.

7    **II.      LEGAL STANDARDS**

8           Federal Rule of Civil Procedure 8 requires a complaint to include "a short and plain

9    statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A

10   complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil

11   Procedure 12(b)(6).

12          To overcome a Rule 12(b)(6) motion to dismiss, the factual allegations in the plaintiff's

13   complaint " 'must . . . suggest that the claim has at least a plausible chance of success.' "  *Levitt v.*

14   *Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *In re Century Aluminum Co. Sec. Litig.*,

15   729 F.3d 1104, 1107 (9th Cir. 2013) (alterations in original)).  In ruling on the motion, courts

16   "accept factual allegations in the complaint as true and construe the pleadings in the light most

17   favorable to the nonmoving party."  *Manzarek*, 519 F.3d at 1031.

18          "[A]llegations in a complaint . . . may not simply recite the elements of a cause of action

19   [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the

20   opposing party to defend itself effectively."  *Levitt*, 765 F.3d at 1135 (quoting *Starr v. Baca*, 652

21   F.3d 1202, 1216 (9th Cir. 2011)).  The court may dismiss a claim "where there is either a lack of a

22   cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim."

23   *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011) (citing *Johnson v. Riverside*

24   *Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008)).  "[T]he non-conclusory 'factual

25

26   [11] With their motion, the Local 180 Defendants filed a request for judicial notice.  ECF 34.  The
     Local 6 Defendants did not file a request for judicial notice, though their motion is accompanied
27   by several exhibits, including the declaration of Nancy Finegan.  ECF 36-1.  The Local 6
     Defendants filed an amended version of that declaration, this time authenticating the proffered
28   exhibits but still without a request for judicial notice, on May 17, 2024.  ECF 46.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   content' and reasonable inferences from that content must be plausibly suggestive of a claim

2   entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

3   **III.   DISCUSSION**

4       Before turning to the pending motions to dismiss, the Court first takes up the Local 180

5   Defendants' request for judicial notice.

6       **A.   Request for Judicial Notice**

7       When deciding whether to grant a motion to dismiss, a court generally "may not consider

8   any material beyond the pleadings." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d

9   1542, 1555 n.19 (9th Cir. 1990).  However, it may consider material submitted as part of the

10  complaint or relied upon in the complaint and may also consider material subject to judicial notice,

11  such as matters that are either "generally known within the trial court's territorial jurisdiction" or

12  "can be accurately and readily determined from sources whose accuracy cannot reasonably be

13  questioned." *See* Fed. R. Evid. 201(b); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688-89

14  (9th Cir. 2001).

15      Here, the Local 180 Defendants ask that the Court take judicial notice of the following

16  documents:

17   • Exhibit A: The Eighth Revised Pension Plan for the Solano-Napa Counties
         Electrical Workers Pension Trust (the "Pension Document").

18
19   • Exhibit B: A December 9, 2022 letter from McClaskey to McClean.

20   • Exhibit C: The 401(a) Profit Sharing Plan Document for the Solano-Napa Counties
         Electrical Workers Profit Sharing Plan (the "PSP Document").

21
22   • Exhibit D: A July 11, 2022 letter from the Electrical Industry Service Bureau
         ("IBEW Local 6 in San Francisco") to McClaskey.

23
24   • Exhibit E: An April 6, 2023 letter from the Maryland Electrical Industry Funds
         ("IBEW Local 24") in response to McClaskey.

25   • Exhibit F: Email correspondence dated June 23, 2022, from Sandy Stephenson at
26       United Administrative Services to McClaskey.

27   • Exhibit G: Email and letter correspondence from November and December of 2023
         between McClaskey and Alice Marshall (administrator of IBEW Local 551 Pension
28       Plan).

- <u>Exhibit H</u>: Quarterly participant statements mailed to McClean.

- <u>Exhibit I</u>: Letters approving applications for distributions from McClean's PSP.

- <u>Exhibit J</u>: A letter regarding the bounced "13th" check issued by the Pension Plan in the amount of $500.00.

- <u>Exhibit K</u>: A United Postal Service confirmation of delivery of the replacement "13th" check and letter on January 4, 2024.

ECF 34 ¶¶ 1-11.

Plaintiffs filed no opposition to the request for judicial notice, and during oral argument, they indicated having no objection to the request. Accordingly, the Local 180 Defendants' request for judicial notice is **GRANTED AS UNOPPOSED**, and the Court takes judicial notice of the existence of the documents listed above.

### B. Motions to Dismiss

The Court first addresses the Local 180 Defendants' motion to dismiss and will then turn to the Local 6 Defendants' motion.

#### 1. The Local 180 Defendants' Motion to Dismiss

Defendants move to dismiss on eight grounds.[12] ECF 33 at 8-25. First, Defendants argue that McClean has failed to exhaust administrative remedies as to the first cause of action. *Id.* at 6-10. Second, Defendants argue that claims one, two, three, five, and six are not viable against a third-party administrator like Benesys and McClaskey. *Id.* at 10-12. Third, Defendants argue that Ms. McClean should be dismissed as a party altogether. *Id.* at 13-14. Fourth, Defendants argue that the first cause of action as to McClean's 2009 application is barred by the statute of

---

[12] The Court has not considered any arguments regarding the ninth cause of action. Plaintiffs did not, as required, seek leave of Court prior to supplementing their complaint with a new cause of action based on facts that occurred after this action was commenced and after the Court dismissed the original complaint. *See* Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 8-F ¶¶ 8:17:20, 8:17:50 (explaining that "[a] supplemental pleading is designed to bring the action 'up to date' and to set forth new facts affecting the controversy that have occurred since the original pleading was filed" and "can only be filed with leave of court and upon such terms as are just."). Accordingly, the ninth cause of action is **STRICKEN**, and the Local 180 Defendants' motion to dismiss that claim is **DENIED AS MOOT.**

United States District Court
Northern District of California

limitations. *Id.* at 14-16. Fifth, Defendants argue that claims two through six are barred by the three-year statute of limitations. *Id.* at 17-21. Sixth, Defendants argue that Plaintiffs have failed to plead sufficient allegations as to claims two through six. *Id.* at 21-23. Seventh, Defendants argue that Plaintiffs have failed to plead sufficient allegations to establish theft as a basis for the sixth cause of action, and further, that the statute of limitations as to that claim has expired. *Id.* at 23-24. Eighth, Defendants argue that Plaintiffs have failed to plead sufficient facts to support the seventh cause of action for statutory penalties for withholding documents. *Id.* at 25. The Court will first address the arguments directed at the merits of Plaintiffs' claims before turning to the arguments about whether McClean's spouse, Benesys, and McClaskey are proper parties to this suit.

### a.   Whether McClean exhausted administrative remedies as to the first cause of action.

The Local 180 Defendants argue that Plaintiffs failed to exhaust administrative remedies as to the 2021 benefits application that is the basis for their first claim for relief.[13] ECF 33 at 6-10. The Ninth Circuit has "consistently held that before bringing suit under § 502, an ERISA plaintiff claiming a denial of benefits 'must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court.'" *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008) (quoting *Diaz v. United Agric. Employee Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995)); *see also Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 961 n.2 (9th Cir. 2006) (reiterating that Ninth Circuit "cases suggest that a claimant must exhaust administrative remedies first."); *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980) (stating that "[t]he legislative history of ERISA . . . clearly suggests that Congress intended to grant authority to the courts to apply the exhaustion requirement in suits arising under the

---

[13] The Local 180 Defendants also argue that Plaintiffs failed to exhaust administrative remedies as to the 2009 application. ECF 33 at 7. During the motion's hearing, Plaintiffs clarified that their first cause of action does not concern the 2009 application. Accordingly, the motion to dismiss the first cause of action with respect to the 2009 application is **DENIED AS MOOT**, and the Court need not reach the Local 180 Defendants' related argument about whether the cause of action is time-barred to the extent it involves the 2009 application, *see* ECF 33 at 14-16.

United States District Court
Northern District of California

Act.").  "Consequently[,] the federal courts have the authority to enforce the exhaustion requirement in suits under ERISA, and as a matter of sound policy they should usually do so."  *Diaz*, 50 F.3d at 1483 (internal modifications and citations omitted).

As relevant here, the Pension Plan's governing document provides that "[a] pension must be applied for in writing in a form and manner prescribed by the Trustees and filed with the Trustees at the Fund Office in advance of the annuity Starting Date."  ECF 34-1 at 43.  An applicant "shall furnish, at the request of the Trustees, any information or proof reasonably required to determine his benefit rights."  *Id.*  If benefits are denied in whole or in part, an applicant may appeal within 60 days of the adverse decision.  *Id.* at 44-45.  Upon receipt of an appeal, "the Trustees shall proceed to review the administrative file, including the petition for review and its contents."  *Id.* at 45.  A decision "shall be made promptly and not later than 60 days after receipt of the petition . . . unless special circumstances . . . require[] an extension of time for processing."  *Id.*

The corresponding ERISA regulations provide:

> In the case of a plan with a committee or board of trustees designated as the appropriate named fiduciary that holds regularly scheduled meetings at least quarterly, . . . , the appropriate named fiduciary shall . . . make a benefit determination no later than the date of the meeting of the committee or board that immediately follows the plan's receipt of a request for review, unless the request for review is filed within 30 days preceding the date of such meeting.  In such case, a benefit determination may be made by no later than the date of the second meeting following the plan's receipt of the request for review.  If special circumstances (such as the need to hold a hearing, if the plan's procedures provide for a hearing) require a further extension of time for processing, a benefit determination shall be rendered not later than the third meeting of the committee or board following the plan's receipt of the request for review.  If such an extension of time for review is required because of special circumstances, the plan administrator shall provide the claimant with written notice of the extension, describing the special circumstances and the date as of which the benefit determination will be made, prior to the commencement of the extension.  The plan administrator shall notify the claimant, in accordance with paragraph (j) of this section, of the benefit determination as soon as possible, but not later than 5 days after the benefit determination is made.

29 C.F.R. § 2560.503-1(i)(1)(ii).

The Local 180 Defendants argue that by failing to respond to a December 9, 2022 letter for

1    more information, McClean failed to exhaust administrative remedies.  ECF 33 at 8-9.  They

2    contend that the lack of McClean's response prevented the Pension Plan Board from making a

3    final determination on his claim, and that as a result, this lawsuit is premature.  *Id.* at 9.  Plaintiffs

4    counter that McClean's appeal was deemed denied on December 9, 2022, because the Pension

5    Plan Board unilaterally extended the deadline to decide the appeal without any "special

6    circumstances" as required by regulations.  ECF 22 at 12.

7         McClean submitted his appeal on July 16, 2021, and McClaskey acknowledged the appeal

8    on July 27, 2021.  ECF 31 ¶ 34.  The Pension Plan Board did not hear McClean's appeal at its

9    September 2022 meeting (at McClean's counsel's request), the December 2022 meeting, or any

10   meeting thereafter.  *See id.* ¶¶ 37-40.  To date, there has been no decision on the appeal.  The

11   Local 180 Defendants do not point to any caselaw permitting them to keep a benefits application

12   pending for the length of time McClean's application has remained unresolved.  *See* ECF 33 at 6-

13   10.  Indeed, the very regulations the Local 180 Defendants cite in support of their position

14   expressly provide that "a benefit determination shall be rendered not later than the third meeting of

15   the committee or board following the plan's receipt of the request for review."  *See* ECF 33 at 8

16   (citing 29 C.F.R. 2560.501-1(i)(1)(ii)).

17        Moreover, while the Local 180 Defendants consider it significant that McClean failed to

18   respond to the December 2022 letter requesting more information, they do not address McClean's

19   contention that the information had already been provided.  Nor do they address why the letter

20   constituted the special circumstances contemplated by the regulations or why the Pension Plan

21   Board did not proceed to a decision once McClean made it clear that he had no further information

22   to provide.  For these reasons, the Local 180 Defendants are not entitled to dismissal on the first

23   cause of action on the ground that McClean failed to exhaust administrative remedies as to the

24   2021 application.  Should the Local 180 Defendants renew their arguments at the summary

25   judgment stage, they must include citations to the record and the relevant legal authority that

26   supports their position.

27        Accordingly, the motion to dismiss the first cause of action for failure to exhaust is

28   **DENIED** with respect to the 2021 application and **DENIED AS MOOT** with respect to the 2009

14

application.

### b.    Whether claims two through six are sufficiently pleaded

The Local 180 Defendants attack claims two through six on the basis that they are insufficiently pleaded.  ECF 33 at 21-23.  The Court agrees.

The factual basis for Plaintiffs' second cause of action reads:

> 54.    In committing the acts and omissions herein alleged, including but not limited to paragraphs 27 through 43, hereinabove, by, inter alia, failing to acquire and maintain records as set forth herein above in paragraphs, by concealing and misrepresenting information pertinent to Mr. McClean's benefits and eligibility for benefits, and failing to resolve Mr. McClean's benefit appeal in a reasonable time, Defendants' actions herein alleged have breached these duties, and have caused the Plaintiffs significant harm, including, but not limited to, incurring substantial attorney fees and costs in seeking to enforce their rights under the Plan and ERISA.  A claim for benefits under the Plan does not provide an adequate remedy at law in light of Defendants' conduct in violating the terms of the Plan and ERISA.

ECF 31 ¶ 54.

The factual basis for Plaintiffs' third cause of action is similar:

> 62.    In committing the acts and omissions herein alleged, including but not limited to paragraphs 27 through 43, by, inter alia, failing to acquire and maintain records as set forth herein above, concealing and misrepresenting information pertinent to Mr. McClean's benefits and eligibility for benefits, and failing to resolve Mr. McClean's benefit appeal in a reasonable time, Defendants' actions herein alleged have breached these duties, and have caused the Plaintiffs significant harm, including, but not limited to, incurring substantial attorney fees and costs in seeking to enforce their rights under the Plan and ERISA.  Likewise, by failing to act to secure deposits into the Pension Plan of all contributions that should have been reciprocated to the Pension Plan, Defendants have harmed the Pension Plan as a whole and all of its participants and beneficiaries.
> 63.    Additionally, by failing to implement reasonable procedures and controls to prevent the theft and/or misappropriation of Mr. McClean's PSP assets, as alleged in, inter alia, paragraphs 4, 40, and 44, Defendants have harmed the Plaintiffs, the PSP, and all of the PSP's participants.

*Id.*  ¶ 62.

These allegations do not align with the fiduciary duties and related legal bases invoked as the proffered grounds for these claims, which include 29 U.S.C. §§ 1104(a)(1)(A), (a)(1)(B), and (a)(1)(D) and 29 U.S.C. § 1133.  Notwithstanding guidance from the Court at the hearing on the

United States District Court
Northern District of California

1    Local 180 Defendants' prior motion to dismiss, Plaintiffs once again fail to differentiate their

2    multiple and seemingly repetitive breach of fiduciary duty claims, which are lumped together in

3    each count without reference to the distinct factual basis giving rise to each alleged breach.  This

4    failure alone is grounds for dismissal of claims two and three.  *See Wehner v. Genetech, Inc.*, No.

5    20-cv-06894-WHO, 2021 WL 507599, at *10 (N.D. Cal. Feb. 9, 2021) (dismissing breach of duty

6    of loyalty claims where the complaint did not differentiate between "breach of prudence claims

7    and . . . breach of loyalty claims.").

8        Even if each distinct set of facts was potentially actionable under every discrete legal basis

9    Plaintiffs invoke, claims two and three nonetheless fail for multiple reasons.  To the extent

10   Plaintiffs seek to allege a breach of the duty of loyalty, they "must allege facts from which it

11   plausibly can be inferred that the Plan's fiduciaries subjectively intended to benefit themselves or

12   a third party at the expense of the Plan's participants."  *Wehner*, 2021 WL 507599, at *10.  These

13   allegations in the operative complaint do not put forth any such facts.  Rather, McClean's

14   allegations, taken as true and construed in his favor, suggest that the Local 180 Defendants are

15   seeking to establish the basis for his pension eligibility before granting benefits.  This is

16   inconsistent with any contention that the Local 180 Defendants' "decisions were made because of

17   self-dealing."  *See Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1156-59

18   (N.D. Cal. 2022) (dismissing breach of duty of loyalty claims with prejudice where the plaintiffs

19   failed to allege facts supporting a plausible finding of a real conflict of interest rather than a mere

20   potential for one).

21       Nor do the allegations in the operative complaint support an inference that any of the

22   defendants failed to discharge their duty of prudence, which requires that "ERISA plan

23   fiduciaries . . . discharge their duties 'with the care, skill, prudence, and diligence under the

24   circumstances then prevailing that a prudent man acting in a like capacity and familiar with such

25   matters would use in the conduct of an enterprise of a like character and with like aims.' "  *See*

26   *Hughes v. Nw. Univ.*, 595 U.S. 170, 172 (2022) (quoting 29 U.S.C. § 1104(a)(1)(B)).  Here,

27   Plaintiffs do not allege which of the specific acts they complain of violate this standard.

28       With respect to Plaintiffs' reliance on 29 U.S.C. § 1104(a)(1)(D), that provision requires a

1   fiduciary to act "in accordance with the documents and instruments governing the plan insofar as

2   such documents and instruments are consistent with" ERISA.  *See Fifth Third Bancorp v.*

3   *Dudenhoeffer*, 573 U.S. 409, 421 (2014).  The allegations in the operative complaint identify no

4   provisions in the governing documents that any fiduciary has allegedly violated.

5     Plaintiffs' reference to 29 U.S.C. § 1133 in the second and third cause of action do not

6   save the claims from dismissal.  That provision requires "every employee benefit plan" to:

7      (1) provide adequate notice in writing to any participant or
      beneficiary whose claim for benefits under the plan has been denied,

8      setting forth the specific reasons for such denial, written in a manner
      calculated to be understood by the participant, and

9      (2) afford a reasonable opportunity to any participant whose
      claim for benefits has been denied for a full and fair review by the

10     appropriate named fiduciary of the decision denying the claim.

11  29 U.S.C. § 1133.  The operative complaint fails to make clear which facts Plaintiffs claim are

12  actionable under this statute or whether any alleged violation is intended to serve as a stand-alone

13  claim or merely as a predicate for a breach of fiduciary claim alleged elsewhere in the same count.

14    Claim six (breach of fiduciary duty for failure to maintain and provide records) also fails.

15  First, to the extent Plaintiffs rely on the failure to maintain records as a basis for the claim,

16  Plaintiffs fail to allege facts plausibly showing that the failure constitutes a breach of the duties

17  arising under 29 U.S.C. §§ 1104(a)(1)(A), (a)(1)(B), or (a)(1)(D).  As with claims two and three,

18  Plaintiffs lump these three legal bases together without differentiating one from the other or

19  distinguishing the specific facts that they allege as corresponding to each duty at issue.

20    Second, insofar as claim six rests on allegations of theft, the Court finds those allegations

21  implausible.  McClean alleges that in 2021, he first discovered that approximately $200,000 had

22  been stolen from his PSP account "by an unknown individual or individuals working in the Plan

23  office."  *Id.* ¶ 4.  McClean had received "a set of check requests for hardship withdrawals from

24  that plan that Mr. McClean had ostensibly submitted to access his funds."  *Id.*  He claims that

25  "most of those requests were not completed in [his] handwriting, were not signed by him (i.e.,

26  they appear to bear forged signatures), and at least one bears a social security number that is not

27  [his]."  *Id.*  When he accessed the portal for the first time after learning about it, he discovered

28  "that one or more other individuals, unknown to him, had accessed and managed his PSP online

account pages on the web portal without his knowledge or permission." *Id.* ¶ 44.

The Local 180 Defendants counter with copies of account records showing that McClean confirmed receipt of distributions in specific amounts and by check number on July 22, 2010, September 16, 2010, November 5, 2010, December 6, 2010, January 7, 2011, and February 5, 2011. ECF 34-9 at 14-19. They also provide copies of quarterly account statements, including a 2011 statement showing an ending balance of zero. *See* ECF 34-8 at 31-32.

McClean attempts to undermine these records by alleging that they document the fraud complained of. *See* ECF 22 at 27. But in opposition, he asserts:

> The facts are these: Mr. McClean took a small number of hardship withdrawals from his PSP balance years ago when he was disabled and unable to work. Then he forgot about the Plan entirely. In 2021 and 2022, when corresponding with Mr. McClaskey, he was reminded of the Plan, and shocked to learn that his account had a zero balance. Counsel requested copies of all documents related to Mr. McClean's PSP account and was provided a series of withdrawal request and the resulting checks. When Mr. McClean and his wife examined the documents, they immediately observed that several of the signatures were not Mr. McClean's, the handwriting on the request forms was not Mr. McClean's, and at least one of the request forms (not in his handwriting) bore somebody else's social security number. Conspicuously, Mr. McClaskey had produced only the front sides of all the checks. Mr. McClean's counsel asked in writing, multiple times, for the back sides of the checks, and made clear that the reason was to determine where they had been deposited, because Mr. McClean's bank records do not indicate that he ever received the money.
>
> Mr. McClaskey and the other defendants have failed to make any reasonable effort to obtain the endorsed side of the checks, and/or have withheld the endorsed sides of the checks, and otherwise utterly failed entirely to investigate the McCleans' theft claims.

ECF 39 at 31-32. In light of the admission in McClean's opposition about hardship withdrawals that he forgot about, he has not stated a plausible claim of theft. Should McClean wish to re-assert this claim in the next iteration of his complaint, he must make clear which withdrawals he made and which were allegedly unauthorized.

Claims four (breach of fiduciary duty for failure to monitor under Sections 503(a)(3) and (a)(2)) and five (co-fiduciary breach under ERISA Sections 405 and 502(a)(3)) are derivative

claims, and as such, are dependent on an underlying breach of fiduciary duty.  Because claims

two, three, and six are insufficiently pleaded for the reasons described above,[14] claims four and

five must also be dismissed.  *See Anderson*, 579 F. Supp. 3d at 1162 (dismissing claims for failure

to monitor and co-fiduciary liability as derivative of the underlying claims for ERISA violations,

which were insufficiently pleaded).

For all of these reasons, the Local 180 Defendants' motion to dismiss the second through

sixth causes of action is **GRANTED**.

               **c.**       ***Whether Plaintiffs pleaded sufficient facts to support the seventh***
                           ***cause of action for statutory penalties for withholding documents***

Under 29 U.S.C. § 1132(c)(1), a plan administrator who "fails or refuses to comply with a

request for any information which such administrator is required . . . to furnish . . . within 30 days

after such request may in the court's discretion be personally liable to [the] participant . . . in the

amount of up to $100 a day from the date of such failure . . . ."  *See Lee v. ING Groep, N.V.*, 829

F.3d 1158, 1160 (9th Cir. 2016).

Plaintiffs allege that the Pension Plan Board and the PSP Board violated Section

1132(c)(1) as follows:

> On multiple dates in 2021 and 2022, Plaintiffs' counsel sent written
> requests to the, [*sic*] requesting copies of all relevant Plan
> documents, records of contribution and service credit, information
> about how Mr. McClean's benefits were calculated, and documents
> showing how Mr. McClean's assets in the PSP were disbursed.
> Some of the requested documents, including but not limited to
> **contribution records, account statements, records relating to the
> 2009 benefit application, and copies of the back sides of checks
> disbursing PSP funds**, have never been provided.

ECF 31 ¶ 84 (emphasis in original).

The Boards contend that these allegations are insufficient because Plaintiffs do "not

identify which documents were requested at what time," Plaintiffs have not produced the written

requests referenced in their allegations," and Plaintiffs have failed to "identify the date of a single

---

[14] The Court thus does not reach the parties' arguments about whether these claims are time-barred.

United States District Court
Northern District of California

1    correspondence showing what was requested and allegedly withheld . . . ." ECF 33 at 25. The

2    Boards further assert that "[t]o the extent that such documents or records exist, Defendants cannot

3    identify with particularity what Plaintiffs refer to as 'contribution records,' 'account statements,'

4    and 'records relating to the 2009 benefit application.'" *Id.* In addition, the Boards explain that the

5    bank records were only maintained for seven years, and many employment records "exist in

6    paper-format only (or are no longer available)." *Id.* The Boards claim that they "have taken every

7    opportunity to provide copies of records relating to contributions and service credit to Mr.

8    McClean's counsel" and have "thoroughly and consistently responded to Plaintiffs' counsel's

9    request for records." *Id.*

10       These arguments do not present grounds for dismissal. The Boards cite no case requiring

11   the level of specificity they demand, *see* ECF 33 at 25; ECF 42 at 19, and to the extent they have a

12   justification for not providing certain documents, any related liability determination is premature

13   at the pleading stage.

14       Accordingly, the motion to dismiss Plaintiffs' seventh cause of action is **DENIED**. The

15   Boards may renew their arguments at the summary judgment stage, with citations to record

16   evidence and supporting legal authority.

17              **d.    *Whether claims one, two, three, five, and six may be asserted***
18                      ***against Benesys and McClaskey***

19       The Local 180 Defendants contend that claims one, two, three, five, and six are improperly

20   asserted against Benesys and McClaskey because they lack the responsibilities and discretion

21   characteristic of a proper defendant. *See* ECF 33 at 10-11. They contend that Benesys and

22   McClaskey "perform purely ministerial functions for the Pension Plan according to a framework

23   of policies and practices that do not involve any discretionary control over a participant's

24   benefits." ECF 33 at 11 (citing ECF 34-1).

25       The Ninth Circuit has explained that "third-party administrators are not fiduciaries if they

26   merely perform ministerial functions, including the preparation of financial reports." *CSA 401(K)*

27   *Plan v. Pension Pros., Inc.*, 195 F.3d 1135, 1138 (9th Cir. 1999) (footnote omitted); *see also Cyr*

28   *v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1207 (9th Cir. 2011) (citing 29 U.S.C. §§ 1021,

1024, 1132(c), 1166)).  In the context of an improper denial of benefits, "proper defendants . . . at least include ERISA plans, formally designated plan administrators, insurers or other entities responsible for payment of benefits, and de facto plan administrators that improperly deny or cause improper denial of benefits."  *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1297 (9th Cir. 2014) (applying and clarifying *Cyr*).

The Court finds it appropriate to let discovery reveal whether the relevant standard is met here, *see Bagley v. KB Home*, No. CV 07-1754 GPS(SSX), 2008 WL 11340342, at *4 (C.D. Cal. Feb. 22, 2008) (noting that "[t]he issue of fiduciary status is a mixed question of law and fact and courts typically will have insufficient facts at the motion to dismiss stage to determine functional or named fiduciary status.") (internal quotations, citations, and modifications omitted), given the extensive allegations of McClaskey's involvement in the underlying conduct at issue, which he undertook as a Benesys employee.  Thus, claim one remains live against McClaskey and Benesys.  Claims two, three, five, and six, however, are dismissed as discussed earlier in this order.

### e.      Whether McClean's spouse is a proper plaintiff

"Under 29 U.S.C. § 1132(a)(1)(B), only a 'participant or beneficiary' has authority to sue to recover ERISA benefits."  *ABC Servs. Grp., Inc. v. Aetna Health & Life Ins. Co.*, No. 22-55631, 2023 WL 6532648, at *1 (9th Cir. Oct. 6, 2023); *see also Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1213 (9th Cir. 2020) (holding that to plead a claim under 29 U.S.C. § 1132(a)(1)(B), a "plaintiff must allege 'the existence of an ERISA plan,' and identify 'the provisions of the plan that entitle [the plaintiff] to benefits' ") (quoting *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1155 (C.D. Cal. 2015)).

///

///

///

///

///

///

///

1    Here, the only allegations as to Mrs. McClean are:

2    Plaintiff JOANNA McCLEAN ("Mrs. McClean;" along with Mr.
     McLean, hereinafter collectively "the McCleans" or "Plaintiffs") is
3    and was at all times relevant hereto the legal spouse of Mr.
     McClean, is the beneficiary of all of his pension accounts, and is a
4    beneficiary, within the meaning of ERISA, 29 U.S.C. § 1002(7),[15]
     of all of the ERISA-regulated employee benefit pension plans
5    named herein.  Mrs. McClean is and at all times relevant hereto was,
     a resident of Fairfield, Solano County, California
6

7    ECF 31 ¶ 8.

8        The Local 180 Defendants attack these allegations on two grounds.  First, they argue that

9    Paragraph 8 is a series of legal conclusions cast as factual allegations.  ECF 33 at 13-14; ECF 42

10   at 15-16.  The Court agrees.  These allegations do not specify whether McClean's spouse asserts

11   claims she is entitled to assert in her own right, i.e., as McClean's legal spouse, or whether she

12   asserts claims on a contingent basis so that she may step into McClean's shoes in the event he

13   should predecease her.  In either scenario, however, Plaintiffs have failed to identify the plan that

14   entitles McClean's spouse to assert claims here, and the specific provisions within that plan that

15   Defendants have wrongfully breached.  *See Doe*, 982 F.3d at 1213.

16       The Local 180 Defendants' second argument also has merit.  They contend that the

17   allegations do not detail any involvement by McClean's spouse in the alleged pension

18   applications, the appeals process, or the withdrawals that occurred during the relevant period.

19   ECF 33 at 14; ECF 42 at 15.  The Local 180 Defendants further argue that there is no record of

20   McClean's spouse raising spousal claims, which means that the Pension Plan Board never had the

21

22   [15] Section 1002(7) defines "participant" as:

23       any employee or former employee of an employer, or any member
         or former member of an employee organization, who is or may
24       become eligible to receive a benefit of any type from an employee
         benefit plan which covers employees of such employer or members
25       of such organization, or whose beneficiaries may be eligible to
         receive any such benefit.
26

27   29 U.S.C. § 1002(7).  A "beneficiary" is "a person designated by a participant, or by the terms of
     an employee benefit plan, who is or may become entitled to a benefit thereunder."  *Id.* § 1002(8).
28

United States District Court
Northern District of California

opportunity to consider her claims, making it "undisputed that Ms. McClean did not exhaust . . . administrative remedies . . . ."  ECF 33 at 14.  The Court finds this argument persuasive, as the operative complaint, and Plaintiffs' opposition, is silent on the issue of exhaustion with respect to any claims McClean's spouse asserts – whether in her own right or in some other capacity.  The failure to allege facts that McClean's spouse has exhausted administrative remedies thus warrants dismissal.  *See Vaught*, 546 F.3d at 626.

Plaintiffs' assertion that "[t]here can be no question that [McClean's] spouse 'is or may become entitled to a benefit' under the Plans and that she is a proper plaintiff to prosecute these claims along with her husband," *see* ECF 39 at 24, is unavailing.  The statement in Plaintiffs' opposition – that McClean "has named his wife Joanna as his sole beneficiary under every benefit plan at issue in this litigation" – does not rebut the arguments the Local 180 Defendants raise regarding the lack of clarity as to the capacity in which McClean's spouse seeks to sue in this case and whether she has properly exhausted administrative remedies, as discussed above.  The suggestion that McClean's spouse's "participation in the lawsuit remains important because Plaintiff Rodney McClean is in poor health," *see* ECF 39 at 25, is insufficient to avoid dismissal for her claims.  As Plaintiffs note in their opposition, McClean's spouse may be substituted as a plaintiff in the event that becomes necessary.  *See id.*

Additionally, the authorities Plaintiffs cite in support of their position are unpersuasive.  In *Sladek v. Bell System Management Pension Plan*, 880 F.2d 972, 974 (7th Cir. 1989), the participant's spouse, a beneficiary under the terms of the pension plan at issue, brought suit after, unlike here, exhausting administrative remedies.  The Tenth Circuit's decision in *David P. v. United Healthcare Insurance Co.*, 77 F.4th 1293 (10th Cir. 2023) is also factually inapposite.  There, a teenager's father brought suit under ERISA seeking coverage under a group health plan for his child's mental health and substance abuse treatment.  The child was a beneficiary under the plan at issue and seeking coverage under that plan for medical services she received directly, claiming they were "medically necessary" as the term was defined by the health plan.  *See id.* at 1301.  *Bain v. United Healthcare Inc.*, No. 15-cv-03305-EMC, 2020 WL 808236, *1 (N.D. Cal. February 14, 2020) is likewise factually inapposite.  *Bain* also involved a health insurance

coverage dispute between a family and an insurer over the alleged wrongful denial of benefits for mental health treatment for a child who was covered under the insurance plan at issue.  *Id.*  The insurer claimed that the treatment was not "medically necessary" as defined in the insurance policy.  Here, however, Plaintiffs point to no provision of the benefit plans that potentially entitle McClean's spouse to any benefit she seeks to recover through this lawsuit.  Nor does she, as discussed above, specify the capacity in which she claims any such benefit.

Accordingly, the Local 180 Defendants' motion to dismiss McClean's spouse as a plaintiff is **GRANTED**.

### 2.    The Local 6 Defendants' Motion to Dismiss

The Local 6 Defendants move to dismiss the sole claim asserted against them – Plaintiffs' eighth cause of action – on two grounds.[16]  ECF 36 at 2 & n.1.  First, they argue that McClean lacks standing to bring suit because he is not a participant in the Local 6 Pension Plan and has not been since his accrued benefit was permanently forfeited in 1991.  *Id.* at 7-8.  Second, they argue that McClean's spouse cannot "maintain this action as a beneficiary because she cannot be a beneficiary of an individual who is not a participant."  *Id.* at 8.  Both arguments warrant dismissal.

---

[16] In ruling on the Local 6 Defendants' motion, the Court has not considered the various exhibits offered in support.  The Local 6 Defendants have not filed a request for judicial notice or otherwise explained why the Court can properly consider the materials at this stage given its delay in curing the deficiencies Plaintiffs raised in their opposition brief.  The Court has also not considered arguments about McClean's failure to exhaust administrative remedies, *see* ECF 41 at 6-9, which the Local 6 Defendants raised for the first time on reply, *see Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived."), which, in any event, are more properly resolved at summary judgment.  *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) ("In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6).  Otherwise, defendants must produce evidence proving failure to exhaust in order to carry their burden."); *see also Norris*, 2016 WL 1588345, at *6 (applying *Albino* and collecting ERISA cases in which it has been applied).  Further, the Court has disregarded paragraph 43, which purports to state a separate claim against the Local 6 Defendants, *see* ECF 40 at 9 (citing paragraph 43 in explaining that "the Amended Complaint added a new claim against the Local 6/NCEW Defendants"), given Plaintiffs' confirmation during oral argument that the operative complaint does not state any new claims against the Local 6 Defendants.

A review of the allegations in the operative complaint show that McClean has failed to plead facts sufficient to establish standing[17] either as a participant or a beneficiary.[18]  McClean's claim against the Local 6 Defendants arises under 29 U.S.C. § 1132(a)(3), which allows a "participant or beneficiary" to sue for certain equitable relief.  *See Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1038 (9th Cir. 2006).  "If [McClean] is not a 'participant or beneficiary' of the Plan, however, he lacks standing to bring [his] claim[] . . . ."  *See id.*  ERISA defines a "participant" as:

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7).  A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."  *Id.* § 1002(8).

Here, the allegations in the operative complaint do not establish that McClean is a participant or beneficiary of the Local 6 Pension Plan.[19]  As a preliminary matter, the Court does not credit the legal conclusion, though cast in the form of a factual allegation, that McClean "is

---

[17] "Although . . . standing often connotes subject matter jurisdiction, ERISA statutory standing is a substantive element of an ERISA claim rather than a subject matter jurisdiction question." *Norris v. Mazzola*, No. 15-cv-04962-JSC, 2016 WL 1588345, at *2 (citing 29 U.S.C. § 1132(a)(1)(B)). Thus, the Court analyzes the Local 6 Defendants' motion to dismiss for lack of statutory standing under Rule 12(b)(6) rather than Rule 12(b)(1).  *See id.*

[18] The Court reaches this determination without regard to the factual issues the parties raise in their briefs.  This includes those set forth in the declaration of McClean's counsel, which states, under penalty of perjury, that the Local 6 Defendants' forfeiture "assertion triggered my client's memory about the events of the 1980s." *See* ECF 40-1 ¶ 5.

[19] McClean does not defend the sufficiency of the allegations, instead arguing that the Local 6 Defendants' motion to dismiss is really one for summary judgment. ECF 40 at 3.  McClean additionally contends that "[f]actually, the Local 6/NCEW Defendants' arguments implicate an additional legal claim against them for which Plaintiffs plan to seek leave to amend their complaint: Estoppel under ERISA."  *Id.*  The Court reserves those matters for when, and if, McClean files a properly noticed motion under Federal Rule of Civil Procedure 15 (or obtains a stipulation from all defendants) to add such a claim.

United States District Court
Northern District of California

and was at all times relevant hereto a participant and a beneficiary, within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), in all of the ERISA-regulated employee pension benefit plans named herein." *See Moss*, 572 F.3d at 969.

Indeed, the factual allegations in the operative complaint do not bear this out.  First, there are no allegations that McClean was designated by a participant, or by the terms of an employee benefit plan, as someone entitled to a benefit under the Local 6 Pension Plan, as required by Section 1002(8).  Second, there are no allegations that McClean is entitled to receive a benefit of any type from the Local 6 Pension Plan as required by Section 1002(7).  Though McClean alleges that he "performed many thousands of hours of work within the geographic jurisdiction of, inter alia, IBEW Local 6 (the IBEW's San Francisco local)[,]" that "[e]mployers withheld pension contributions from Mr. McClean's paychecks and remitted those contributions to the Local 6 Pension Plan[,]" he also alleges that "[a]t the time he performed the work, [he] had executed and submitted all necessary paperwork to have those contributions 'reciprocated' (meaning 'transferred,' or 'forwarded') to his Local 180 Pension Plan."  ECF 31 ¶ 3.  While McClean adds that "the Local 180 Plan claims it has no record of having received such contributions[,]" McClean alleges no facts to support a plausible inference that he is still entitled to any benefit from the Local 6 Pension Plan, and he makes no argument to that effect in his opposition.  *See generally* ECF 40.

Accordingly, the Local 6 Defendants' motion to dismiss is **GRANTED** to the extent it is based on McClean's failure to allege facts establishing his standing to sue as a participant or beneficiary.

The Local 6 Defendants' motion is also granted as to any purported claim against them by McClean's spouse.  The Local 6 Defendants argue that McClean's spouse cannot "maintain this action as a beneficiary because she cannot be a beneficiary of an individual who is not a participant."  ECF 36 at 7.  McClean does not address this argument in his opposition, *see generally* ECF 40, and during oral argument, McClean directed the Court to the arguments made in opposition to the Local 180 Defendants' motion to dismiss.  For the same reasons discussed in

connection with that motion, therefore, the Local 6 Defendants' motion to dismiss as to McClean's spouse standing to sue is **GRANTED**.

Accordingly, the Local 6 Defendants' motion to dismiss the eighth cause of action is **GRANTED**.

## IV.    CONCLUSION

For the reasons set forth above, the Local 180 Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.  The Local 6 Defendants' motion is **GRANTED**.  Plaintiffs may file a second amended complaint curing the deficiencies set forth in this order within 21 days.  They may not, however, add new claims without consent of all parties or leave of court.  The second amended complaint shall be accompanied by a redline as required by the Court's Standing Order for Civil Cases ¶ H.1, with chambers copies delivered within 3 days of filing as required by the Court's Standing Order for Civil Cases ¶ H.6.

**IT IS SO ORDERED.**

Dated: August 7, 2024

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

United States District Court
Northern District of California