UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY MCCLEAN, et al., | Case No. 23-cv-01054-AMO |
| Plaintiffs, | |
| v. | **ORDER RE MOTIONS TO DISMISS** |
| SOLANO/NAPA COUNTIES ELECTRICAL WORKERS PROFIT SHARING PLAN, et al., | Re: Dkt. Nos. 59, 60 |
| Defendants. | |

In this ERISA benefits action, two motions to dismiss and accompanying requests for judicial notice, each filed by a different set of defendants—the Local 180 Defendants and the Local 6 Defendants—are currently pending before the Court. The Court addresses each motion and corresponding request for judicial notice in turn.

The Court previously dismissed claims two through six against the Local 180 Defendants. In its order of dismissal, the Court explained:

> The[] allegations do not align with the fiduciary duties and related legal bases invoked as the proffered grounds for these claims, which include 29 U.S.C. §§ 1104(a)(1)(A), (a)(1)(B), and (a)(1)(D) and 29 U.S.C. § 1133. Notwithstanding guidance from the Court at the hearing on the Local 180 Defendants' prior motion to dismiss, Plaintiffs once again fail to differentiate their multiple and seemingly repetitive breach of fiduciary duty claims, which are lumped together in each count without reference to the distinct factual basis giving rise to each alleged breach. This failure alone is grounds for dismissal of claims two and three. *See Wehner v. Genetech, Inc.*, No. 20-cv-06894-WHO, 2021 WL 507599, at *10 (N.D. Cal. Feb. 9, 2021) (dismissing breach of duty of loyalty claims where the complaint did not differentiate between "breach of prudence claims and . . . breach of loyalty claims.").
>
> Even if each distinct set of facts was potentially actionable under every discrete legal basis Plaintiffs invoke, claims two and three nonetheless fail for multiple reasons. To the extent Plaintiffs seek to allege a breach of the duty of loyalty, they "must allege facts

from which it plausibly can be inferred that the Plan's fiduciaries subjectively intended to benefit themselves or a third party at the expense of the Plan's participants." *Wehner*, 2021 WL 507599, at *10. These allegations in the operative complaint do not put forth any such facts. Rather, McClean's allegations, taken as true and construed in his favor, suggest that the Local 180 Defendants are seeking to establish the basis for his pension eligibility before granting benefits. This is inconsistent with any contention that the Local 180 Defendants' "decisions were made because of self-dealing." *See Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1156-59 (N.D. Cal. 2022) (dismissing breach of duty of loyalty claims with prejudice where the plaintiffs failed to allege facts supporting a plausible finding of a real conflict of interest rather than a mere potential for one).

Nor do the allegations in the operative complaint support an inference that any of the defendants failed to discharge their duty of prudence, which requires that "ERISA plan fiduciaries . . . discharge their duties 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.' " *See Hughes v. Nw. Univ.*, 595 U.S. 170, 172 (2022) (quoting 29 U.S.C. § 1104(a)(1)(B)). Here, Plaintiffs do not allege which of the specific acts they complain of violate this standard.

With respect to Plaintiffs' reliance on 29 U.S.C. § 1104(a)(1)(D), that provision requires a fiduciary to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with" ERISA. *See Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014). The allegations in the operative complaint identify no provisions in the governing documents that any fiduciary has allegedly violated.

Plaintiffs' reference to 29 U.S.C. § 1133 in the second and third cause of action do not save the claims from dismissal. That provision requires "every employee benefit plan" to:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. The operative complaint fails to make clear which facts Plaintiffs claim are actionable under this statute or whether any alleged violation is intended to serve as a stand-alone claim or merely as a predicate for a breach of fiduciary claim alleged elsewhere in the same count.

2

Claim six (breach of fiduciary duty for failure to maintain and provide records) also fails. First, to the extent Plaintiffs rely on the failure to maintain records as a basis for the claim, Plaintiffs fail to allege facts plausibly showing that the failure constitutes a breach of the duties arising under 29 U.S.C. §§ 1104(a)(1)(A), (a)(1)(B), or (a)(1)(D). As with claims two and three, Plaintiffs lump these three legal bases together without differentiating one from the other or distinguishing the specific facts that they allege as corresponding to each duty at issue.

Second, insofar as claim six rests on allegations of theft, the Court finds those allegations implausible. McClean alleges that in 2021, he first discovered that approximately $200,000 had been stolen from his PSP account "by an unknown individual or individuals working in the Plan office." *Id.* ¶ 4. McClean had received "a set of check requests for hardship withdrawals from that plan that Mr. McClean had ostensibly submitted to access his funds." *Id.* He claims that "most of those requests were not completed in [his] handwriting, were not signed by him (i.e., they appear to bear forged signatures), and at least one bears a social security number that is not [his]." *Id.* When he accessed the portal for the first time after learning about it, he discovered "that one or more other individuals, unknown to him, had accessed and managed his PSP online account pages on the web portal without his knowledge or permission." *Id.* ¶ 44.

The Local 180 Defendants counter with copies of account records showing that McClean confirmed receipt of distributions in specific amounts and by check number on July 22, 2010, September 16, 2010, November 5, 2010, December 6, 2010, January 7, 2011, and February 5, 2011. ECF 34-9 at 14-19. They also provide copies of quarterly account statements, including a 2011 statement showing an ending balance of zero. *See* ECF 34-8 at 31-32.

McClean attempts to undermine these records by alleging that they document the fraud complained of. *See* ECF 22 at 27. But in opposition, he asserts:

> The facts are these: Mr. McClean took a small number of hardship withdrawals from his PSP balance years ago when he was disabled and unable to work. Then he forgot about the Plan entirely. In 2021 and 2022, when corresponding with Mr. McClaskey, he was reminded of the Plan, and shocked to learn that his account had a zero balance. Counsel requested copies of all documents related to Mr. McClean's PSP account and was provided a series of withdrawal request and the resulting checks. When Mr. McClean and his wife examined the documents, they immediately observed that several of the signatures were not Mr. McClean's, the handwriting on the request forms was not Mr. McClean's, and at least one of the request forms (not

3

>     in his handwriting) bore somebody else's social
>     security number.  Conspicuously, Mr. McClaskey
>     had produced only the front sides of all the checks.
>     Mr. McClean's counsel asked in writing, multiple
>     times, for the back sides of the checks, and made
>     clear that the reason was to determine where they had
>     been deposited, because Mr. McClean's bank records
>     do not indicate that he ever received the money.
>
>     Mr. McClaskey and the other defendants have failed
>     to make any reasonable effort to obtain the endorsed
>     side of the checks, and/or have withheld the endorsed
>     sides of the checks, and otherwise utterly failed
>     entirely to investigate the McCleans' theft claims.
>
> ECF 39 at 31-32.  In light of the admission in McClean's opposition about hardship withdrawals that he forgot about, he has not stated a plausible claim of theft.  Should McClean wish to re-assert this claim in the next iteration of his complaint, he must make clear which withdrawals he made and which were allegedly unauthorized.
>
>     Claims four (breach of fiduciary duty for failure to monitor under Sections 503(a)(3) and (a)(2)) and five (co-fiduciary breach under ERISA Sections 405 and 502(a)(3)) are derivative claims, and as such, are dependent on an underlying breach of fiduciary duty. Because claims two, three, and six are insufficiently pleaded for the reasons described above, claims four and five must also be dismissed.[1]  *See Anderson*, 579 F. Supp. 3d at 1162 (dismissing claims for failure to monitor and co-fiduciary liability as derivative of the underlying claims for ERISA violations, which were insufficiently pleaded).

Order at 15-19 (footnote omitted).

In the now operative second amended complaint, claims two through six remain insufficiently pleaded as discussed in the Court's prior order.[2]  Indeed, Plaintiffs indicate that "[t]he claims are not organized in terms of specific alleged misconduct but rather in terms of the

---

[1] In their opposition, Plaintiffs assert that "if [they] fail[] to prove any fiduciary breaches at all under the first two causes of action, then the Third, Fourth, and Fifth Causes of Action will also fail." Local 180 Opp. at 11.  But "[t]he Sixth Cause of Action for the failure to maintain records is independent of the other Causes of Action and does not require the Court to find any underlying breaches of fiduciary duty other than the failure to maintain records." *Id.*

[2] The only exception is the now-bolstered allegations of unauthorized withdrawals, which are now plausible, but nonetheless fail for failure to align those allegations with the corresponding legal basis as discussed above.

4

parties sued and the remedies sought." Opposition to Local 180 Defendants' Motion to Dismiss ("Local 180 Opp.") (Dkt. No. 63) at 10.  So, once again, Plaintiffs' "allegations do not align with the fiduciary duties and related legal bases invoked as the proffered grounds for [their] claims." Order at 15.  The Court therefore finds dismissal appropriate on this basis.  Because the Court has put Plaintiffs on notice of this recurring deficiency once at the hearing on the initial motion to dismiss and again in the Court's order resolving subsequent motions to dismiss, claims two through six are **DISMISSED WITHOUT LEAVE TO AMEND**.  *See Zaidi v. Adamas Pharms., Inc.*, 650 F. Supp. 3d 848, 865 (N.D. Cal. 2023) ("In general, the Court should grant leave to amend, but if a plaintiff has previously amended and failed to correct deficiencies, the Court's discretion to deny leave to amend is particularly broad[.]") (internal quotations and citations omitted; modification in original).  Moreover, because these claims fail based on the pleading deficiencies discussed above, the Court does not reach the parties' arguments as to whether Mrs. McClean may properly assert those claims, whether the claims are time-barred, or whether the documents submitted with the Local 180 Defendants' request for judicial notice are properly before the Court.  That request is therefore **DENIED AS MOOT**.

With respect to the Local 6 Defendants, the Court previously dismissed the only cause of action – for breach of fiduciary duty for failure to maintain and provide records – that Mr. McClean asserts against them.  The Court explained:

> A review of the allegations in the operative complaint show that McClean has failed to plead facts sufficient to establish standing either as a participant or a beneficiary.  McClean's claim against the Local 6 Defendants arises under 29 U.S.C. § 1132(a)(3), which allows a "participant or beneficiary" to sue for certain equitable relief.  *See Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1038 (9th Cir. 2006).  "If [McClean] is not a 'participant or beneficiary' of the Plan, however, he lacks standing to bring [his] claim[] . . . ."  *See id.*  ERISA defines a "participant" as:
>
>> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

5

> 29 U.S.C. § 1002(7). A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." *Id.* § 1002(8).
>
> Here, the allegations in the operative complaint do not establish that McClean is a participant or beneficiary of the Local 6 Pension Plan. As a preliminary matter, the Court does not credit the legal conclusion, though cast in the form of a factual allegation, that McClean "is and was at all times relevant hereto a participant and a beneficiary, within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), in all of the ERISA-regulated employee pension benefit plans named herein." *See Moss*, 572 F.3d at 969.
>
> Indeed, the factual allegations in the operative complaint do not bear this out. First, there are no allegations that McClean was designated by a participant, or by the terms of an employee benefit plan, as someone entitled to a benefit under the Local 6 Pension Plan, as required by Section 1002(8). Second, there are no allegations that McClean is entitled to receive a benefit of any type from the Local 6 Pension Plan as required by Section 1002(7). Though McClean alleges that he "performed many thousands of hours of work within the geographic jurisdiction of, inter alia, IBEW Local 6 (the IBEW's San Francisco local)[,]" that "[e]mployers withheld pension contributions from Mr. McClean's paychecks and remitted those contributions to the Local 6 Pension Plan[,]" he also alleges that "[a]t the time he performed the work, [he] had executed and submitted all necessary paperwork to have those contributions 'reciprocated' (meaning 'transferred,' or 'forwarded') to his Local 180 Pension Plan." ECF 31 ¶ 3. While McClean adds that "the Local 180 Plan claims it has no record of having received such contributions[,]" McClean alleges no facts to support a plausible inference that he is still entitled to any benefit from the Local 6 Pension Plan, and he makes no argument to that effect in his opposition. *See generally* ECF 40.

Order at 25-26. This analysis applies equally to the operative second amended complaint. As before, Mr. McClean alleges he "performed many thousands of hours of work within the geographic jurisdiction of, inter alia, IBEW Local 6 (the IBEW's San Francisco local)[,]" that "[e]mployers withheld pension contributions from Mr. McClean's paychecks and remitted those contributions to the Local 6 Pension Plan . . . [,]" and that "[a]t the time he performed the work, Mr. McClean had executed and submitted all necessary paperwork to have those contributions 'reciprocated' (meaning 'transferred,' or 'forwarded') to his Local 180 Pension," which "claims it has no record of having received such contributions." Second Amended Compl. ("SAC") (Dkt. 56) ¶ 3. For the reasons previously explained, any entitlement by Mr. McClean to any benefits from Local 6 is implausible in light of his own allegations that any contributions would have or should have been reciprocated. That Mr. McClean may have had a conversation with Franz Glen,

a Trustee of the Local 6 Pension Plan, assuring him that certain service credits would not be forfeited due to a break in service, *see* SAC ¶ 3, does not compel a different conclusion. Even if, as Mr. McClean claims, certain service credits were not forfeited, they nonetheless would have been reciprocated, as Mr. McClean alleges all service credits should have been, to Local 180. Thus, any claimed entitlement to benefits from Local 6 based on non-forfeited credits remains implausible. Because the deficiencies discussed in the Court's prior dismissal order persist, the Court **GRANTS** Local 6's motion to dismiss **WITHOUT LEAVE TO AMEND** without reaching Local 6's remaining arguments. *See Zaidi*, 650 F. Supp. 3d at 865. Moreover, because the sole claim asserted against Local 6 fails without regard to the materials Local 6 attaches to its request for judicial notice, the request is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: September 23, 2025

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

7